# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

CAROLE KOPS, on behalf of
herself and all others similarly
situated,

        Plaintiff,

v.                                       **MEMORANDUM OF LAW & ORDER**
                                        Civil File No. 06-574 (MJD/JJG)

NVE CORPORATION, DANIEL
A. BAKER, JAMES M. DAUGHTON,
and JEFFREY K. KASZUBINSKI,

        Defendants.
_____

MARK BOARDMAN, on behalf of
himself and all others similarly
situated,

        Plaintiff,

v.                                          Civil File No. 06-982 (MJD/JJG)

NVE CORPORATION, DANIEL
A. BAKER, and JAMES M.
DAUGHTON,

        Defendants.
_____

CATHI CANUTI, on behalf of
herself and all others similarly
situated,

1

        Plaintiff,

v.                                                                 Civil File No. 06-997 (MJD/JJG)

NVE CORPORATION, DANIEL
A. BAKER, JAMES M. DAUGHTON,
and JEFFREY K. KASZUBINSKI,

        Defendants.
_____

Gregg M. Corwin and Katherine L. Miller, Gregg M. Corwin & Associates Law Office, PC, and W. Todd Ver Weire and William B. Federman, Federman & Sherwood, Counsel for Plaintiff Carole Kops and for Movants Shawn Aaron, Brian G. Beatty, Andrew G. Cawley, and Steve Conway.

Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, Counsel for Plaintiff Mark Boardman.

Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield; John K. Grant, Samuel H. Rudman, David A. Rosenfeld, Mario Alba, Jr., Lerach Coughlin Stoia Geller Rudman & Robbins LLP; and Nancy A. Kulesa, Jeffrey S. Nobel, and Andrew M. Schatz, Schatz & Nobel, P.C., Counsel for Movants Rebecca El-Gamel and Kevin Joo.

Eric T. Chafin and Stephen A. Weiss Karen Hanson Riebel and Richard A. Lockridge, Lockridge Grindal Nauen, Counsel for Plaintiff Cathi Canuti.

Gretchen A. Agee, Peter W. Carter, and Seth J. S. Leventhal, Dorsey & Whitney LLP, Counsel for Defendants NVE Corporation, Daniel A. Baker, James M. Daughton, and Jeffrey K. Kaszubinski.
_____

**I.      INTRODUCTION**

      This matter is before the Court on Motion to Consolidate Related Actions,

for Appointment of Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of

Counsel as Lead and Liaison Counsel for the Class  [Docket No. 8 in 06-574; Docket No. 5 in 06-982; Docket No. 6 in 06-997] by Brian G. Beatty, Steve Conway, Shawn Aaron, and Andrew G. Cawley; and Motion for Consolidation, for Appointment as Lead Plaintiffs, and for Approval of Selection of Lead and Liaison Counsel [Docket No. 14 in 06-574; Docket No. 11 in 06-982; Docket No. 12 in 6-997] by Rebecca El-Gamel and Kevin Joo.  The Court heard oral argument on July 6, 2006.

## II.     BACKGROUND

### A.     Factual Background

NVE Corporation is a Minnesota-based corporation that specializes in spintronics, nanotechnology used to store information using electron spin.  NVE licenses intellectual property, such as Magnetic Random Access Memories ("MRAM") technology, and sells spintronic products.  One of NVE's licensees was Cypress Semiconductor Corporation.

Currently before the Court are three purported securities fraud class action lawsuits brought on behalf of all persons who purchased or acquired NVE securities during the period of May 22, 2003 through February 11, 2005.  All three complaints allege that the Class Period began with the May 22, 2003, NVE press release stating that NVE had been awarded a government contract to develop MRAM, noting that current NVE licensees included Cypress, and describing NVE's

MRAM development in a positive light.  Throughout the Class Period, NVE made various statements regarding the success of its MRAM technology and NVE's technology agreement with Cypress.  All three complaints end the Class Period on Friday, February 11, 2005, the last trading day before Monday, February 14, 2005.  On February 14, Cypress issued a press release revealing that it would divest its subsidiary that had been founded to commercialize MRAM because it concluded that MRAM could only be "a niche technology with higher bit pricing than that of SRAM."  Plaintiffs allege that, after this announcement, NVE's common stock price fell from $28.36 per share on February 11, 2005 to $17.04 per share on April 19, 2005.

All three Complaints allege that Defendants - NVE Corporation; NVE's CEO, Daniel A. Baker; NVE's Chief Technology Officer, James M. Daughton; and NVE Director, Jeffrey K. Kaszubinski[1], violated federal securities laws - Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 thereunder - by disseminating false and misleading information about NVE, which artificially inflated its stock price.

B.   **Procedural Background**

On February 10, 2006, Plaintiff Carole Kops filed a class action complaint against NVE, Baker, Daughton, and Kaszubinski.  On March 6, 2006, Plaintiff Mark Boardman filed a class action complaint against NVE, Baker, and Daughton.  On

---

[1]Kaszubinski is not a Defendant in the Boardman action.

March 7, 2006, Plaintiff Cathi Canuti filed a class action complaint against NVE, Baker, Daughton, and Kaszubinski.

On April 11, 2006, two competing groups of movants filed motions requesting consolidation, appointment as lead plaintiff, and appointment of their counsel as lead counsel.  One motion was filed by Brian G. Beatty, Steve Conway, Shawn Aaron, and Andrew G. Cawley ("the Beatty Group").  The other motion was filed by Rebecca El-Gamel and Kevin Joo ("El-Gamel Group").

## III.   DISCUSSION

### A.   Motions to Consolidate

The Private Securities Litigation Reform Act ("PSLRA") requires the Court to address outstanding motions to consolidate before appointing lead plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Rule 42(a) of the Federal Rules of Civil Procedure instructs that a court may, in its discretion, order consolidation of pending actions involving a common question of law or fact to avoid unnecessary costs or delay.

All three actions against NVE assert potential class action claims on behalf of purchasers of NVE securities during the same time period for the same alleged statutory violations.  All three actions allege that the shareholders who purchased NVE common stock during that Class Period were damaged because they purchased NVE shares at prices that were artificially inflated by misleading statements.  The defendants in all three actions are identical, except that the

5

Boardman action does not name Kaszubinski as an individual Defendant. There is no opposition to the motions to consolidate. Because the three actions are essentially identical in their factual and legal bases and consolidation will effectively streamline discovery and general case management, the Court grants the request to consolidate these cases.

### B. Appointment of Lead Plaintiffs

The PSLRA, which governs the appointment of lead plaintiffs in private actions arising under the Exchange Act, instructs the Court to consider any motions for lead plaintiff "as soon as practicable" after ruling on pending consolidation motions. 15 U.S.C. § 78u-4(a)(3)(B)(ii). In order to determine lead plaintiff, the Court must first determine if the groups vying for appointment have met the notification requirement under the PSLRA. The Court will then decide which group is the most adequate lead plaintiff.

#### 1. Notification Requirement

The process of appointment of lead plaintiff begins with a notification requirement. The plaintiff who files the initial action must publish, within twenty days of filing the complaint, in a widely circulated national business-oriented publication, a notice advising members of the purported plaintiff class of the pending action. 15 U.S.C. § 78u-4(a)(3)(A)(i), (ii). Members of the purported

plaintiff class have sixty days from the date of publication to move the Court to serve as lead plaintiff.  Id. at (a)(3)(A)(i).

Kops filed the first complaint in these related cases on February 10, 2006. Also on February 10, she published the appropriate notice over PR Newswire, a national wire service.  Publication through an electronic wire service satisfies the PSLRA's publication requirement.  Greebel v. FTP Software, Inc., 939 F. Supp. 57, 64 (D. Mass. 1996).

Both the Beatty Group and the El-Gamel Group filed timely motions to serve as lead plaintiff on April 11, 2006.  Both motions contained the required certifications stating that they were willing to serve as class representatives.  15 U.S.C. § 78u-4(a)(2)(A).  Thus, both Groups are entitled to have the Court consider their applications for appointment as lead plaintiff.

    **2.**    **Most Adequate Plaintiff**

        **a.**    **Standard**

After satisfaction of the notification requirement, the Court should select the person or group most "most capable of adequately representing the interests of the class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  A group of persons can collectively serve as lead plaintiff.  Brown v. Computerized Thermal Imaging Inc., Civil No. 02-611-KI, 2002 WL 31109563, at *1 (D. Or. Sept. 24, 2002) (unpublished).

When making the choice of lead plaintiff under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has filed the complaint or made a motion in response to the published notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  § 78u-4(a)(3)(B)(iii).  This presumption may be rebutted upon proof that the plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  Id.

> If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements [of Rule 23(a)], he becomes the presumptively most adequate plaintiff.  If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.

In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).  The statute "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.  Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements."  Id. at 732.

**b.      Largest Financial Interest Requirement**

8

### i.     Standard

Both Groups claim to have the largest financial interest in this case.  The Court must decide whether to include losses on shares sold during the Class Period, and, thus, before the February 14, 2005, revelation, in the loss calculation.

The PSLRA does not articulate the procedure for determining the largest financial interest among the competing movants.  However, many courts, including this Court, have utilized the <u>Lax</u> four-factor inquiry.  The factors are: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs."  <u>Lax v. First Merchs. Acceptance Corp.</u>, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (unpublished).  Courts have employed this test to garner more information and to avoid a situation wherein the presumptive plaintiff has actually profited during the class period from the inflated stock prices.

### ii.     Shares Purchased and Net Funds Expended

In the El-Gamel Group, during the Class Period, El-Gamel purchased 4,000 shares and sold 1,900 shares.  Joo purchased 56,393 shares and sold all of those shares by December 8, 2004, two months before the end of the Class Period.  In total, the El-Gamel Group bought 60,393 shares, but only purchased 2,100 net

shares.  The El-Gamel Group expended at least $641,902.24 in total net funds during the Class Period.

The Beatty Group members all held their shares throughout the Class Period.  In total, the Beatty Group purchased 13,150 shares and 13,150 net shares.  The Beatty Group expended $598,680.50 in total net funds during the Class Period.

Thus, the first factor, number of shares purchases, and the third factor, total net funds expended by plaintiffs during the class period, weigh in favor of the El-Gamel Group.  The second factor, the number of net shares purchased, weighs in favor of the Beatty Group.  The Court now turns to the fourth factor: the approximate losses suffered by the movants.

### iii.    Losses Suffered

The El-Gamel Groups claims a total loss of $641,902.24.  The Beatty Group claims a total loss of $353,304.50.  The El-Gamel Group's claimed loss on NVE stock is almost $300,000 larger than the Beatty Group's claimed loss; however, Joo sold all of his NVE stock before the February 14, 2005 disclosure at the close of the Class Period, and El-Gamel sold some of her stock before that date.  Thus, the Court must determine whether each claimed dollar amount constitutes a loss that could be caused by the alleged fraud.

Under the PSLRA, recoverable losses are defined as follows:

> (1) In general
>
> Except as provided in paragraph (2), in any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.
>
> (2) Exception
>
> In any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e). Both statutory loss calculations only recognize losses for sales of the security after dissemination of "information correcting the misstatement or omission that is the basis for the action."

In Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005), the Supreme Court held that in order to state a claim for securities fraud, a plaintiff cannot simply allege that the price of the stock was inflated by a misrepresentation at the time that he purchased it. Instead, the plaintiff must claim that the share prices fell after the truth became known, causing a loss to the

11

plaintiff.  Id. at 347.  "[A] person who 'misrepresents the financial condition of a corporation in order to sell its stock' becomes liable to a relying purchaser 'for the loss' the purchaser sustains 'when the facts . . . become generally known' and 'as a result' share value 'depreciate[s].'"  Id. at 344 (quoting Restatement of Torts § 548A, cmt. b.).  Under Dura, the Court only calculates losses incurred from sales occurring after disclosure, that is, losses proximately caused by the alleged fraud.

Under Dura principles, unless a partial disclosure occurred before the end of the Class Period, Joo has not suffered any loss as the result of Defendants' actions because Joo sold all of his shares before the truth was revealed, lowering the inflated stock price.  Additionally, El-Gamel's loss based on sales after the February 14, 2005 disclosure is far less than the Beatty Group's loss.

The El-Gamel Group asserts that a November 22, 2004, article published in the Motley Fool, which was critical of NVE and its MRAM technology, constituted a partial disclosure.  None of the Complaints allege any loss or drop in stock price caused by the Motley Fool article; however, at oral argument, counsel represented that the share price fell after publication of the article.  Even if the Motley Fool article is considered to be a partial disclosure, and the Court considered the El-Gamel Group's losses incurred on sales that occurred after publication of the article, the El-Gamel Group does not dispute that its total loss would be less than the Beatty Group's total loss.

The Court concludes that the Beatty Group suffered the largest loss. In the context of this motion, the Court is not inclined to consider the Motley Fool article to be a partial disclosure because none of the Complaints allege any loss caused by or drop in stock price occurring immediately after publication of the article, and other than counsel's oral representation, there is no evidence of any loss following publication. However, even if the Court did consider losses to the El-Gamel Group occurring after the Motley Fool article, the Beatty Group would still have the largest loss.

The Court concludes that the Beatty Group is the movant with the largest financial interest because it purchased the largest net shares during the Class Period and suffered the largest loss. Because the movant with the largest financial interest is presumptively the lead plaintiff under the PSLRA, the Beatty Group is the presumptive lead plaintiff.

### c.   FRCP 23(a) Requirements

In addition to showing the greatest financial interest, the PSLRA also requires that the presumptive lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). According to Rule 23(a) of the Federal Rules of Civil Procedure, a plaintiff may sue as a class representative if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of

13

law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." At this stage the Rule 23 considerations are limited to the questions of typicality and adequacy. Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 407 n.8 (D. Minn. 1998). The lead plaintiff need only make a preliminary showing that it has claims that are typical to the putative class and has the capacity to provide adequate representation for those class members. In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 441 (S.D. Tex. 2002).

### i.     Rule 23(a) Typicality

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same series of events or are based on the same legal theories as the claims of all the class members. Paxton v. Union Nat'l Bank, 688 F.2d 552, 561-562 (8th Cir. 1982). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citation omitted).

In this case, the Beatty Group's claims are typical because they allege that they purchased NVE stock during the Class Period at prices artificially inflated by false and misleading statements issued by Defendants and were damaged by that fraud when the truth was disclosed and the stock price fell.

### ii.   Rule 23(a) Adequacy

Rule 23(a)(4) requires the lead plaintiff to "fairly and adequately protect the interests of the class." "To satisfy the adequacy requirement, Plaintiffs must show that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." In re GenesisIntermedia, Inc. Sec. Litig., 232 F.R.D. 321, 330 (D. Minn. 2005) (citations omitted).

### aa.   Qualifications of Counsel

Based on the evidence before the Court, the Beatty Group has retained competent and experienced counsel. Its proposed lead counsel, Federman & Sherwood, has previous class action experience, has been appointed lead counsel various times, and has recently settled two securities class actions. Its proposed liaison counsel, Gregg M. Corwin & Associates Law Office, PC, is an experienced local law firm qualified to assist lead counsel.

### bb.   Potential Conflicts and Unique Defenses

"A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999).  While the El-Gamel Group, and Joo in particular, would face a unique defense related to loss causation because Joo sold all of his NVE shares before the end of the Class Period and the alleged revelation of the fraud on the market, the Court finds no such obstacle to the representation by the Beatty Group.  Cf. In re Veeco Instruments, Inc., 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (noting that it was questionable whether proposed lead plaintiff that sold all of its stock before issuance of corporation's curative disclosure suffered any loss and that, it was "at the very least, subject to a unique defense").  The Beatty Group's interests appear similar to the interests of the proposed class.

The Court rejects the El-Gamel Group's assertion that, because the Beatty Group did not sell shares during the Class Period, it cannot adequately represent the entire class.  The El-Gamel Group asserts that, by arguing that class members who sold shares during the Class Period did not suffer a loss, the Beatty Group damages the claims of a substantial portion of the class who did sell shares during the Class Period.  The Beatty Group members have certified that they will protect the class's interest.  Because the Beatty Group has suffered the largest financial loss in the action, it has a strong incentive to vigorously pursue this case.

16

Although the Beatty Group may not have a personal incentive to advance the claims of in-and-out investors, the Beatty Group members will owe a fiduciary duty to advance the interests of the class members. In re Quintas Sec. Litig., 201 F.R.D. 475, 482 (N.D. Cal. 2001).

### C. Appointment of Lead and Liaison Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the most adequate plaintiff shall, subject to Court approval, select and retain counsel to represent the class. As noted previously, the team of proposed lead counsel, Federman & Sherwood, and proposed liaison counsel, Corwin & Associates, has adequate experience and resources to represent the proposed class.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Motion to Consolidate Related Actions, for Appointment of Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel as Lead and Liaison Counsel for the Class [Docket No. 8 in 06-574; Docket No. 5 in 06-982; Docket No. 6 in 06-997] by Brian G. Beatty, Steve Conway, Shawn Aaron, and Andrew G. Cawley is **GRANTED** as follows:

    a. These matters, Civil File Nos. 06-574, 06-982, and 06-997, are consolidated. Hereinafter, the caption for the consolidated securities fraud action shall be as follows:
    United States District Court
    District of Minnesota
    In re NVE Corporation Securities Litigation, Master File No. 06-574 (MJD/JJG).

      b.      A copy of this Order shall be docketed in all other constituent files, but the files in this consolidated action shall be maintained under Master File No. 06-574 (MJD/JJG), and all orders, pleadings, motions, and other documents when docketed in the Master File shall be deemed to be filed and docketed in the constituent file.

      c.      This Order shall apply to each substantively related case that is subsequently filed in this Court or is transferred to this Court and is consolidated with this securities fraud action.

      d.      The Beatty Group, consisting of Brian G. Beatty, Steve Conway, Shawn Aaron, and Andrew G. Cawley, is appointed as Lead Plaintiff.

      e.      Federman & Sherwood, is appointed as Lead Counsel.

      f.      Gregg M. Corwin & Associates Law Office, PC, is appointed as Liaison Counsel.

2. Motion for Consolidation, for Appointment as Lead Plaintiffs, and for Approval of Selection of Lead and Liaison Counsel [Docket No. 14 in 06-574; Docket No. 11 in 06-982; Docket No. 12 in 6-997] by Rebecca El-Gamel and Kevin Joo is **DENIED**.

Dated: July 17, 2006                                  s / Michael J. Davis
                                                                Judge Michael J. Davis
                                                                United States District Court